[Cite as *State v. Walker*, 2015-Ohio-3129.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. William B. Hoffman, P. J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2014 AP 09 0039 |
| JASON R. WALKER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No. 2014 CR 03 0056

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 4, 2015

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

RYAN STYER                              MATTHEW PETIT
PROSECUTING ATTORNEY                    116 Cleveland Avenue North
MICHAEL J. ERNEST                       Canton, Ohio  44702
ASSISTANT PROSECUTOR
125 East High Avenue
New Philadelphia, Ohio  44663

*Wise, J.,*

{¶1}  Appellant Jason R. Walker appeals his conviction and sentence entered in the  Tuscarawas County Court of Common Pleas following a jury trial.

{¶2}  Appellee is the State of Ohio.

**STATEMENT OF THE FACTS AND CASE**

{¶3}  The relevant facts are as follows:

{¶4}  On February 19, 2014, the Holmes County Sherriff's Department, as part of a local drug task force operation, executed a search warrant for the home of Christine Bundy at 336 Walnut Street, Newcomerstown, Ohio. (T. at 190-191).

{¶5}  On April 17, 2014, as a result of the above search, Appellant Jason R. Walker was indicted by the Tuscarawas County Grand Jury on one count of violating R.C. §2925.11(A), Aggravated Possession of Drugs, a felony of the fifth degree, R.C. §2925.04(A), Illegal Manufacturing of Drugs, a felony of the second degree, and R.C. §2925.041(A), Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, a felony of the third degree.

{¶6}  On August 12, 2014, a Jury Trial was conducted in this matter.  At trial, the jury heard the following testimony:

{¶7}  Officer Seth Harper of the Newcomerstown Police Department stated that he began to conduct surveillance of the home after hearing speculation that it was being used for the manufacturing of methamphetamine. (T. at 190-191). When Officer Harper went to the home with the search warrant on February 19, 2014, he found one person present, Christine Bundy. (T. at 191).

{¶8}  Also residing at this residence were Ms. Bundy's teenage son, Dale Bundy, her daughter Cassandra Lewis and Ms. Lewis' boyfriend, Appellant Jason R. Walker. (T. at 130, 156-159). This home was a duplex in which Ms. Bundy rented the lower portion. (T. at 130). According to Christine Bundy, she began residing at this address in November, 2013, through February, 2014. (T. at 131-132).

{¶9}  Upon entering the home, Officer Harper stated that he explained to Christine Bundy he was there to execute the search warrant. She then indicated that she believed there were items in the basement of the home used in the manufacturing of methamphetamine. (T. at 192). Ms. Bundy retrieved a key to the basement and took the officers downstairs. Upon going into the basement, Officer Harper stated that they discovered suspected methamphetamine labs and different components. (T. at 192).

{¶10} Officer Harper described various two liter bottles that were found in the basement that are used in the manufacturing process. (T. at 193). Also found in the basement was Coleman fuel, which Officer Harper stated was also used to produce methamphetamine. (T. at 194). Officer Harper also described finding batteries that had been cut open. Officer Harper stated that the batteries were cut open in order to remove the lithium strip from the battery which is used to produce methamphetamine. (T. at 195). Also found in the basement was a gallon jug of muriatic acid. (T. at 197). Officer Harper explained that muriatic acid is used in the manufacturing of methamphetamine. (T. at 197). Officer Harper stated that he found a HCL generator. (T. at 198). Harper described the HCL generator as a plastic beverage bottle with a hole that has been drilled in the top of it so that you can put tubing into it. (T. at 198). Harper went on to described that they also found within the home what appeared to be

burned aluminum foil that is used in the process of ingesting methamphetamine and Pseudoephedrine pills. Officer Harper stated that the aluminum foil, along with a light bulb that had been converted to a smoking device were all found to contain trace amounts of methamphetamine. (T. at 198-199). The aluminum foil was found in the trash associated with the home, and the light bulb was found in the northwest bedroom that was shared by Cassandra Lewis and Appellant. (T. at 204).

{¶11} Testimony was presented from Det. Joe Mullett of the Holmes County Sheriff's Office and the LEAD Task Force. (T. at 236). Det. Mullett testified that he has training and expertise in the areas of identification and dismantling clandestine labs, particularly methamphetamine. (T. at 232). Det. Mullett stated that he discovered cut open batteries laying on the floor of the basement, along with coffee filters, used coffee filters, and a two-liter bottle which had residue in the bottom. (T. at 233). Det. Mullett testified that based upon his training and experience, these are all items used in manufacturing methamphetamine. (T. at 238).

{¶12} Det. Mullett also stated that the basement contained a crawl space in which they discovered a white bag. Within the bag was what he described as a methamphetamine lab, along with multiple components such as an HCL generator, tubing and hoses. (T. at 239). Det. Mullett also described finding what he referred to as "liquid fire" which is a kind of ignitable liquid. (T. at 239). Det. Mullett went on to describe that all of the batteries in the basement had been cut, and their lithium strips had been pulled out. (T. at 240). Mullett stated that within the basement there was a "one pot" lab that began to activate. (T. at 240). According to Det. Mullett, this lab had been used very recently because the lithium within it still appeared to be solid. (T. at

241). Det. Mullett also stated that they found muriatic acid in the basement which he indicated is also part of the manufacturing process. (T. at 240-242). Det. Mullett stated that it was his opinion that someone was manufacturing methamphetamine at 336 Walnut Street because all of the components were present, as well as the actual labs. (T. at 242).

{¶13} According to Ms. Bundy, Appellant told her that he makes methamphetamine (T. at 139). Bundy stated that this occurred during the time period in which he was staying in her home. (T. at 139). Ms. Bundy also stated that while Appellant resided with her, he would provide her with methamphetamine. (T. at 135). Ms. Bundy stated that she would provide Appellant with Pseudoephedrine, and Appellant would offer her money or methamphetamine in exchange. (T. at 136). Ms. Bundy stated that she would acquire the Pseudoephedrine at local pharmacies and then provide it to the Appellant. (T. at 136).

{¶14} Ms. Bundy further stated that she was under the impression that Appellant was making methamphetamine because she was regularly providing him with Pseudoephedrine. (T. at 136). Further, there was an incident where she smelled fumes or vapors that she associated with manufacturing methamphetamine coming from the basement in the home where she was residing with Appellant. (T. at 136). According to Bundy, Appellant would provide her with methamphetamine at least a couple times a week. (T. at 139).

{¶15} Appellant's girlfriend, Cassandra Lewis, testified that she and Appellant resided 336 Walnut Street in Newcomerstown, Ohio, with her mother, Christine Bundy. (T. at 158). Ms. Lewis stated that Appellant was "in and out" of the residence during the

time period in which she stayed there. (T. at 159). Ms. Lewis testified that she and Appellant would often use methamphetamine. (T. at 160). According to Ms. Lewis, she would acquire Pseudoephedrine, lye, and other ingredients for Appellant to use in making methamphetamine. (T. at 160-162). According to Ms. Lewis, she did not take part in the manufacturing of methamphetamine due to a lack of knowledge and concerns with the manufacturing process. (T. at 162). According to Ms. Lewis, while she had objections to manufacturing methamphetamine, she did not object to Appellant making it because she "wanted to get high". (T. at 163).

{¶16} According to Ms. Lewis, she witnessed Appellant going into the basement of their home. (T. at 168). Ms. Lewis stated that he would go into the basement after she provided him with Pseudoephedrine and that he would come out of the basement with methamphetamine. (T. at 168).

{¶17} Ms. Lewis also stated that Appellant had a bag in which he kept items necessary for making methamphetamine. (T. at 169). Ms. Lewis testified that Appellant kept Coleman fuel, an ice pack, lye, and other items that had to do with the manufacturing of methamphetamine in such bag. (T. at 170). Ms. Lewis went on to reiterate that she would acquire ingredients for Walker as they both were users of methamphetamine. (T. at 170).

{¶18} As for methamphetamine being manufactured at her home, Ms. Lewis also testified that she would see smoke or vapor coming from the basement. Lewis went on to state that she associated smoke or vapor with the manufacturing of methamphetamine that was taking place in the basement. (T. at 171). Ms. Lewis indicated that there was no reason to inquire as to the smoke or vapor as it was

obvious and she knew it was associated with the manufacturing of methamphetamine. (T. at 171).

{¶19} Further, Ms. Lewis, admitted that Appellant would go into the basement after receiving Pseudoephedrine from her, and he would come back from the basement and have methamphetamine. (T. at 168). Ms. Lewis also stated that she recalled being at the 336 Walnut Street address on the morning of February 19th, as that was her daughter's birthday. (T. at 190). She also recalled that Appellant had been staying at the home and was with her on that date at 336 Walnut Street. (T. at 190). Ms. Lewis stated that Appellant began residing at the home around Christmas of 2013 and stayed there off and on up until the time period of February 19, 2014. (T. at 178).

{¶20} Following deliberations, the jury found Appellant guilty on all counts.

{¶21} Appellant now appeals, assigning the following error for review:

**ASSIGNMENT OF ERROR**

{¶22} "I. THE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**I.**

{¶23} In his sole Assignment of Error, Appellant argues that his convictions were against the manifest weight and sufficiency of the evidence. We disagree.

{¶24} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶25}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶26}** In the case *sub judice*, Appellant was convicted of violating R.C. §2925.11(A), R.C. §2925.04(A), and R.C. §2925.041 (A):

R.C. §2925.11(A), Aggravated Possession of Drugs

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog

R.C. §2925.04(A), Illegal Manufacturing of Drugs

(A) No person shall knowingly ... manufacture or otherwise engage in any part of the production of a controlled substance.

R.C. §2925.041 (A), Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs

No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code

{¶27} In the case at bar, the testimony established methamphetamine was being manufactured at the home on Walnut Street. Testimony further established items used in the manufacture of methamphetamine were located at the house, i.e. cut batteries, clean and used coffee filters, two-liter bottles. Additional testimony was presented that a methamphetamine lab was found in the basement along with tubing, hoses and an HCL generator. Further, testimony was presented that Appellant had both his girlfriend and her mother make numerous purchases of the chemical precursor, pseudoephedrine, along with lithium batteries and lye, used to make methamphetamine. Both Cassandra Lewis and Christine Bundy testified that Appellant manufactured methamphetamine at the house.

{¶28} Appellant argues that the State's witnesses, Christine Bundy and Cassandra Lewis, were not credible witnesses.

{¶29} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio– 2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

{¶30} We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost its way nor created a miscarriage of justice in convicting Hardman of the charge.

{¶31} Based upon the foregoing and the entire record in this matter, and viewing this evidence in a light most favorable to the State, a rational trier of fact could have found Appellant guilty of the crimes as charged. Further, the judgment is not against the manifest weight of the evidence.

{¶32} Appellant's sole Assignment of Error is overruled.

{¶33} For the forgoing reasons, the judgment of the Common Pleas Court of Tuscarawas County, Ohio, is affirmed.


By: Wise, J.,

Hoffman, P. J., and

Farmer, J., concur


JWW/d 0721